*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RM, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 13, 2025
11:28 AM

Petitioner-Appellee,

v

No. 369080
Allegan Circuit Court
Family Division
LC No. 23-066693-DL

RM,

Respondent-Appellant.

---

Before: PATEL, P.J., and MURRAY and YATES, JJ.

PER CURIAM.

RM pleaded no-contest to a misdemeanor charge of malicious destruction of trees, shrubs, grass, or turf in the amount of $200 or more but less than $1,000, MCL 750.382(1)(b)(*i*). Because of that plea, the trial court conducted a hearing to determine the amount of damage that RM caused to the Lake Doster Golf Club, and then ordered RM to pay restitution of $35,820, which consisted of $2,500 to the golf club for its deductible and $33,320 to the golf club's insurer. On appeal, RM contends that the trial court erred by not determining the fair market value of the damaged property and that the trial court did not accurately identify the repair costs. We conclude that, with one very minor exception, the trial court correctly resolved the legal issues and made unassailable findings of fact with respect to restitution.

## I. FACTUAL BACKGROUND

On November 26, 2022, RM rode a friend's ATV around the Lake Doster Golf Club. After RM rode recklessly around the golf course, the greens on the sixth and seventh holes were severely damaged. RM was charged with one count of felonious malicious destruction causing damage of $20,000.00 or more, MCL 750.382(1)(d)(*i*). On May 3, 2023, RM entered into a plea agreement that allowed him to plead no-contest to a reduced charge of malicious destruction of trees, shrubs, grass, or turf in the amount of $200.00 to $1,000.00, MCL 750.382(1)(b)(*i*). After RM entered his

-1-

plea on May 3, 2023, the matter was set for a restitution hearing, which took place on three separate dates, i.e., August 9, 2023, September 19, 2023, and November 17, 2023.

The evidence adduced at the restitution hearing established that the golf club had to pay a $2,500 deductible to its insurer, Westfield Insurance Company (Westfield). Additionally, the golf club negotiated an insurance payment of $58,657 from Westfield to repair the damage RM caused to the sixth and seventh greens. At the restitution hearing, three golf-club representatives testified about the extent of the damage to the greens and the money spent to remediate that damage. First, Barton Hartson—the former managing partner of the golf club—explained the club's negotiations with Westfield and the estimates of remediation costs on which those parties agreed. Next, Daniel Haagsma—the groundskeeper at the golf course—described the damage that RM caused. Finally, David Yaw—a longtime owner of the golf club—offered a detailed recitation of the costs incurred by the golf club in remediating the damage RM caused to the sixth and seventh greens. To develop a complete record, the trial court followed up on the attorneys' questions by asking Yaw about the specific elements of costs that Hartson had identified.

Following the comprehensive presentation of evidence at the three-day restitution hearing, the trial court painstakingly rendered detailed findings of fact concerning the costs incurred by the golf club and Westfield. Accepting the concession of RM's attorney, the trial court found that RM was obligated to pay $2,500 in restitution to the golf club to account for the deductible it paid. The trial court spent much more time explaining the amount of restitution owed to Westfield. Although the prosecution asked the trial court to award Westfield $58,657 reduced by the $2,500 deductible to reflect the entire amount it paid to the golf club as the insured, the trial court decided instead to limit Westfield's restitution to the aggregate amount of costs expended by the golf club on repairs to the sixth and seventh greens. As a result, the trial court arrived at a restitution award of $33,320 to Westfield. RM then appealed, challenging that restitution award to Westfield.

## II. LEGAL ANALYSIS

RM contests the trial court's calculation of restitution by faulting the trial court for refusing to ascertain the fair market value of the damaged course and, instead, relying on the incurred repair costs to establish the amount of restitution. Beyond that, RM contends that the trial court neglected to identify the components of the repair costs that added up to the aggregate amount of restitution. "The purpose of restitution is to allow crime victims to recoup losses suffered as a result of criminal conduct." *People v Newton*, 257 Mich App 61, 68; 665 NW2d 504 (2003) (quotation marks and citation omitted). Restitution is not intended to provide a windfall for crime victims; its aim is to ensure crime victims are made whole for their losses. *People v Corbin*, 312 Mich App 352, 370; 880 NW2d 2 (2015). "An order of restitution is generally reviewed for an abuse of discretion." *In re McEvoy*, 267 Mich App 55, 59; 704 NW2d 78 (2005). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). With these standards in mind, we shall turn to RM's claims on appeal.

## A.  FAIR MARKET VALUE VERSUS REPAIR COSTS

RM asserts that the trial court was obligated under MCL 712A.30(3)(b) to consider the fair market value of the damaged property in establishing the amount of restitution.  According to MCL 712A.30(3)(b), "[i]f a juvenile offense results in damage to or loss or destruction of property of a victim of the juvenile offense," then "the order of restitution may require that the juvenile . . . pay an amount equal to the greater of . . . [t]he value of the property on the date of the damage, loss, or destruction" or "[t]he value of the property on the date of disposition."  But MCL 712A.31(1) explains that, "[i]n determining the amount of restitution to order under [MCL 712A.30], the court shall consider the amount of the loss sustained by any victim as a result of the juvenile offense."  Here, the victims of RM's juvenile offense were not dispossessed of their property.  Instead, they were forced to pay the costs necessary to return the property to the condition it was in before RM's offense.  In this circumstance, determining the fair market value of the property makes less sense than determining how much it cost the victims to return the property to its original condition.[1]

In granting courts the power to order restitution, "the Legislature has clearly manifested an intent to make victims of a crime as whole as they can fairly be made and to leave the determination of how best to do so to the trial court's discretion on the basis of the evidence presented" during a hearing at which the prosecution must bear the burden of proof.  *People v Gubachy*, 272 Mich App 706, 713; 728 NW2d 891 (2006).  To be sure, " '[t]he controlling factor with respect to determining the amount of restitution is the victim's loss,' and a restitution award premised on the basis of the replacement value of damaged property is improper."  *In re White*, 330 Mich App 476, 483; 948 NW2d 643 (2019).  But the victims in this case simply requested their actual, out-of-pocket losses, so the trial court did not err in awarding those losses as restitution, irrespective of the fair market value of the damaged golf course.  Indeed, the trial court's approach properly awarded an amount of restitution "to make [the] victims as whole as they can be and to fully compensate them for their losses."  See *id*. at 484.

## B.  CALCULATION OF THE RESTITUTION AWARD

RM argues that even if the trial court employed an appropriate methodology for setting the restitution award, the trial court erred in identifying the components of the victims' losses.  As an initial matter, we note that the golf club's payment of a $2,500 deductible to its insurer constitutes an actual, readily ascertainable loss, so the trial court properly treated the amount of the deductible as an appropriate component of restitution.  Beyond that, the record establishes that the golf club's insurer negotiated and made a payment of $58,657 (reduced by the $2,500 deductible) to the golf club, but the trial court awarded just $35,820 as an aggregate amount of restitution, which the trial court reduced by $2,500 to account for the deductible separately.  Therefore, the aggregate amount

---

[1] The "fair market value" of property "refers to the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation."  *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 696; 840 NW2d 168 (2013).  Neither victim in this case is contemplating the sale of the golf course as a whole—or the sixth and seventh greens in particular—to RM or anyone else, so determining the fair market value of the property would make no sense.  The victims simply want to be compensated for the costs they incurred in repairing the damage done to the golf course by RM, so an award of their reasonable costs for repairs is an appropriate measure of restitution.

of restitution substantially exceeded the $2,500 deductible, but fell well below the amount that the golf club received from its insurer.

We begin our analysis of the restitution award by noting that the full amount of the payment from the insurer to the golf club did not have to be (and apparently was not) applied to repairs that the golf club chose to make to its course. As a result, the record reveals that the golf club received some money from its insurer that it did not apply to golf-course repairs, so the award of restitution must be confined to the amount of money actually required to repair the golf course. Additionally, any restitution in excess of the $2,500 deductible cannot be paid to the golf club. See *Corbin*, 312 Mich App at 360 ("Nor is restitution properly awarded for losses paid by insurance."). Rather, all restitution that exceeds the $2,500 deductible must be paid to Westfield in its capacity as the club's insurer. Therefore, our task on appeal involves analyzing the amount of restitution RM must pay to Westfield to repair the damage to the golf course caused by RM's misconduct.

The trial court considered the repair-cost estimates built into Westfield's agreement to pay the golf club, as its insured, $58,657—minus the $2,500 deductible—to repair the damaged greens, but the trial court declined the prosecution's invitation to take the estimate at face value and award the full amount of Westfield's payment as restitution. Instead, the trial court awarded as restitution to Westfield only the aggregate amount actually expended for repairs to the greens, as established by a preponderance of the evidence. See MCL 712A.31(4) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence."). In doing so, the trial court made a clear finding on each component of restitution and assigned a dollar value to each component. Specifically, the trial court added up $1,100 for sand, $600 for seed, $9,000 for chemicals and fertilizer, $1,000 for sod, $3,000 for one tarp, $2,000 for gas and oil, $1,000 for ropes, signs, and stakes, $420 for an existing greens mower, $700 for sprinkler heads, $1,500 for a top dresser, $400 for hoses, $5,400 for a sod cutter, and $12,600 for labor to arrive at a restitution amount. The trial court stated on that record that those figures add up to $35,820, but this Court's addition of those figures yields the sum of $38,720. Regardless of the correct sum, the trial court's findings properly included a reduction of $2,500 to account for the deductible. Thus, the trial court arrived at a restitution amount for Westfield of $33,320, whereas this Court's arithmetic results in a restitution figure of $36,220 for Westfield.

With the exception of the discrepancy in addition and subtraction of the components of the restitution amount, we find that the trial court neither abused its discretion nor committed any clear error in arriving at its restitution figure for Westfield. Accordingly, we vacate the restitution award of $33,320 to Westfield and remand the case to allow the trial court to check its arithmetic and, if necessary, to amend the amount of restitution due to Westfield. In every other respect, the findings and restitution awards of the trial court are affirmed.

Affirmed in part, vacated in part, and remanded. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Christopher M. Murray
/s/ Christopher P. Yates